IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| In the Matter of the Detention of | No. 82510-1-I |
|---|---|
| L.B., | |
| Appellant. | UNPUBLISHED OPINION |

BOWMAN, J. — L.B. appeals a 14-day involuntary commitment. She contends and the State concedes that neither the trial court nor the prosecutor advised her that a 14-day involuntary treatment order would lead to the loss of her firearm rights. We accept the concession. Because neither the court nor the prosecutor complied with the obligation under RCW 71.05.240(2) to notify L.B. of the effect of involuntary commitment on her constitutionally protected firearm rights, we reverse and remand to vacate the superior court's 14-day involuntary commitment order.

In a 14-day civil commitment proceeding, the court or the prosecutor must inform the person facing involuntary detention of the potential impact of the proceeding on firearm rights:

> If the petition is for mental health treatment, the court or the prosecutor at the time of the probable cause hearing and before an order of commitment is entered <u>shall inform the person both orally and in writing that the failure to make a good faith effort to seek</u>

voluntary treatment as provided in RCW 71.05.230 will result in the loss of his or her firearm rights if the person is subsequently detained for involuntary treatment under this section.

RCW 71.05.240(2).[1]

In In re Detention of T.C., 11 Wn. App. 2d 51, 66, 54-55, 450 P.3d 1230 (2019), we reversed and remanded to vacate a 14-day involuntary commitment order where the trial court[2] failed to advise the person facing commitment at the time of the probable cause hearing and before entry of the commitment order that the refusal to seek voluntary treatment would lead to the loss of firearm rights. We also held that lack of compliance with RCW 71.05.240(2) is an error implicating a constitutional right that the appellant may raise for the first time on appeal. T.C., 11 Wn. App. 2d at 61-62.

Here, the superior court commissioner entered a 14-day involuntary commitment order, finding that

> [b]efore this order was entered, the court notified [L.B.], orally and in writing, that the failure to make a good faith effort to seek voluntary treatment will result in the loss of [L.B.]'s firearm rights if [L.B.] is detained for involuntary treatment as the result of a mental disorder.

A superior court judge then affirmed the finding by denying L.B.'s motion to revise the commissioner's order.[3] See Maldonado v. Maldonado, 197 Wn. App.

---

[1] Emphasis added.

[2] T.C. applied former RCW 71.05.240(2) (LAWS OF 2016, 1st Spec. Sess., ch. 29, § 232), which placed the burden solely on the court to provide the required notice; while the current statute allows either the court or the prosecutor to provide the requisite notice. See T.C., 11 Wn. App. 2d at 62; RCW 71.05.240(2).

[3] L.B. moved to revise only the finding and conclusion that she was "gravely disabled."

779, 789, 391 P.3d 546 (2017) ("Under RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court.").

But the record does not support the commissioner's finding. As in T.C., 11 Wn. App. 2d at 63, there is nothing in this record to show that the court or prosecutor advised L.B. orally or in writing at the probable cause hearing or any time before entry of the commitment order that involuntary detention would extinguish her firearm rights. At the time of her initial detention, treatment facility staff gave L.B. a form notifying her of certain rights. That form stated that detention based on a finding of "a likelihood of serious harm" to herself or others would lead to a 6-month suspension of her right to possess firearms. But neither the court nor the prosecutor advised L.B. that she could lose her firearm rights. And no one told L.B. that she could avoid the loss of rights by obtaining voluntary treatment or that the effect of a 14-day involuntary commitment order could be permanent. See RCW 71.05.240(6) (firearm possession prohibition resulting from involuntary commitment "remains in effect" until a court restores the right).

As the State concedes, the failure to advise L.B. in accordance with the express provisions of RCW 71.05.240(2) prejudicially affected L.B.'s

constitutional right to possess firearms. We reverse and remand to vacate the

14-day involuntary commitment order.[4]

Brennan, J

WE CONCUR:

Smith, J.                          Andrus, A.C.J.

---

[4] Involuntary civil commitment cases are not moot on appeal even after the commitment period has ended because such commitments may constitute evidence in subsequent proceedings. See In re Det. of M.K., 168 Wn. App. 621, 629, 279 P.3d 897 (2012); RCW 71.05.245(3). The State does not argue otherwise or contend that to preserve her claim of error on appeal, it was necessary for L.B. to raise the firearm notification issue in her motion to revise. Because we have discretion to address manifest constitutional error raised for the first time on appeal, see RAP 2.5(a)(3), and accept the State's concession of error, we need not reach L.B.'s alternative claim of ineffective assistance of counsel for not claiming the failure to notify issue in the motion for revision.